IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENNETH LEE BARFIELD,
    Plaintiff,

vs.                                      Case No. 5:11cv251/MMP/EMT

DR. KATS-KAGAN, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 10).  Leave to proceed in forma pauperis has been granted (doc. 5).

      Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true, and only reasonable inferences are drawn in favor of the plaintiff.  *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam)

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001). Upon review of the amended complaint in the instant case, the court concludes that dismissal of the complaint is warranted.

I.   RELEVANT ALLEGATIONS

Plaintiff names five Defendants, all of whom were members of the medical staff at Graceville Correctional Institution at the time of the events giving rise to this action: Dr. Kats-Kagan, Medical Director; Ms. Alexander, ARNP; K. Matcheny, LPN; D. Dowling, ARNP; and Ms. Singletary, medical records custodian (doc. 10 at 1–3).[2] Plaintiff states he was diagnosed with iron-deficiency anemia on February 23, 2010, when he was incarcerated at Charlotte C.I., and on March 13, 2010, he received medication (*id.* at 6). He states he was transferred to Graceville C.I. on April 6, 2010, and upon his arrival the medical staff took his medication (*id.*). Plaintiff received a blood test (*see* doc. 1 at 8). He states he was evaluated by Defendant ARNP Alexander a few days later (doc. 10 at 6). ARNP Alexander told Plaintiff his iron level was normal (*id.*). She refused to prescribe medication but issued Plaintiff a 4,000-calorie diet pass, noting that the diet plan provided food items with iron (*id.*). Plaintiff states he was examined by ARNP Alexander in May of 2010, when he complained of weakness, blurred vision, increased thirst, and sweating (*id.*). Alexander told Plaintiff his iron was normal, and there was nothing wrong with him (*id.*). Plaintiff received another blood test in June of 2010 (*see* doc. 1 at 8).

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Case No.: 5:11cv251/MMP/EMT

Plaintiff utilized the sick call procedure on August 27, 2010, again complaining of weakness, dizziness, increased thirst, sweating, and blurred vision (doc. 10 at 7). He was seen by Defendant LPN Matcheny (*id.*). LPN Matcheny told Plaintiff there was nothing wrong with him (*id.*). Plaintiff advised her he had been diagnosed with anemia, but she responded that he was not anemic (*id.* at 8–9). LPN Matcheny did, however, schedule a vision examination for Plaintiff in response to his complaint of blurred vision (*id.*).

In September of 2010, Plaintiff was again seen by ARNP Alexander (doc. 10 at 7). She advised Plaintiff that if he wished to see copies of his lab results, he could submit a request to the medical records department (*id.*).

In October of 2010, Plaintiff was seen by Defendant ARNP Dowling (doc. 10 at 9). Plaintiff explained his symptoms, and Dowling responded that she would order medication (*id.*). ARNP Dowling also discontinued Plaintiff's 4,000-calorie diet pass (*id.*). Plaintiff states he never received the medication (*id.* at 10).

In November of 2010, Plaintiff requested copies of his medical records (doc. 10 at 10). On November 29, 2010, he had an appointment with Defendant Singletary from the medical records department (*id.*). Singletary and Plaintiff agreed that Plaintiff would stop requesting copies of his medical records, and Singletary would schedule an appointment with Dowling to reissue a 4,000-calorie diet pass and treat Plaintiff's anemia (*id.*). Three days later, on December 2, 2010, Plaintiff was seen by ARNP Dowling (*id.*). ARNP Dowling asked Plaintiff why he needed a diet pass and told him they would discuss the matter at Plaintiff's upcoming appointment in the "asthma clinic" (*id.* at 11). Plaintiff received a blood test (*see id.*; *see also* doc. 1 at 8). He received a 4,000-calorie diet pass the next day (doc. 10 at 11). Plaintiff was seen by Dowling at the asthma clinic on January 10, 2011 (*id.*). Dowling advised Plaintiff she would evaluate his needs when she received his lab results (*id.*).

Plaintiff was seen by Defendant Dr. Kats-Kagan on January 7, 2011, regarding a complaint of hemorrhoids (doc. 10 at 12). During a follow-up visit on February 16, 2011, Plaintiff informed Dr. Kats-Kagan of the "unusual symptoms" he had been experiencing (*id.*). Dr. Kats-Kagan reviewed his medical file, noted that Plaintiff was anemic, and stated she would treat him for it (*id.*). Dr. Kats-Kagan ordered blood tests but did not prescribe medication (*id.*). Plaintiff received a blood test (*see* doc. 1 at 8).

Plaintiff states on March 20, March 28, and April 4, 2011, he utilized the sick call procedure complaining of weakness, increased thirst, sweating, dizziness, faintness, and rapid breathing (doc. 10 at 11). After these visits, ARNP Dowling scheduled him for more blood tests (*id.*). Plaintiff

received two blood tests in the month of April of 2011 (doc. 1 at 8). Plaintiff filed the instant lawsuit in July of 2011 (*id.* at 13).

Plaintiff alleges he has been suffering the previously-described symptoms (weakness, increased thirst, sweating, blurred vision, dizziness, faintness) for the past year (doc. 10 at 14). Plaintiff contends Defendants Alexander, Dowling, Matcheny, and Kats-Kagan were deliberately indifferent to his medical needs in violation of the Eighth Amendment by failing to prescribe medication for his anemia (*id.* at 14–18). He contends Defendant Singletary exhibited deliberate indifference by failing to follow up on her part of their agreement that Plaintiff would be treated for his anemia if he stopped requesting his medical records (*id.* at 16–17). As relief, he seeks "proper medical care" and monetary damages in the amount of $350,000.00 for "suffering" (*id.* at 17).

II.     ANALYSIS

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious

deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

Assuming arguendo that Plaintiff's anemia constitutes a serious medical need, *see, e.g.,* Grajeda v. Horel, No. C 07-4752 PJH, 2010 WL 1266099, at *3 (N.D. Cal. Mar. 30, 2010) (unpublished), Plaintiff's allegations fail to show that Defendants Kats-Kagan, Dowling, Alexander, and Matcheny acted with deliberate indifference. Plaintiff concedes Defendants responded to his condition by monitoring it with regular blood tests. The fact that Plaintiff, or even a medical professional at another institution, assessed Plaintiff's medical needs differently and chose a different course of treatment (i.e., monitoring Plaintiff's condition instead of prescribing medication) does not, alone, constitute deliberate indifference. Despite the court's advising Plaintiff of the Eighth Amendment standard and providing him an opportunity to amend his complaint to state a constitutional claim (*see* doc. 8), Plaintiff still failed to allege facts that plausibly state an Eighth Amendment claim against Defendants Kats-Kagan, Dowling, Alexander, and Matcheny. Therefore, his claims against these Defendants should be dismissed.

Plaintiff's allegations against Defendant Singletary, the medical records custodian, are even weaker. Plaintiff seeks to hold her liable for failing to "follow-up" on their alleged agreement (that Plaintiff would stop filing grievances to obtain his medical records, if he received his diet and

treatment for anemia).  Plaintiff acknowledges that three days after Singletary's alleged promise, Plaintiff was examined by ARNP Dowling (a medical treatment provider instead of a records custodian) and received a blood test and a 4,000-calorie diet pass.  These facts do not plausibly suggest Defendant Singletary subjectively knew that Plaintiff required more treatment.  Therefore, Plaintiff's Eighth Amendment claim against Defendant Singletary should also be dismissed for failure to state a claim.

III.   CONCLUSION

The facts as pleaded do not state a claim for relief that is plausible on its face against any Defendant.  Therefore, Plaintiff's amended complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and judgment should be entered accordingly.

Accordingly, it respectfully **RECOMMENDED**:

1. That the amended complaint (doc. 10) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

2. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 23rd day of November 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**